UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:20-cr-00375-MTK-1 |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| BILLY LYNN BROSOWSKE, | |
| Defendant. | |

**KASUBHAI,** United States District Judge:

This matter comes before the Court on Defendant Billy Lynn Brosowske's Motion for Compassionate Release, ECF No. 53. For the reasons that follow, Defendant's Motion is denied.

## BACKGROUND

On February 11, 2020, while on supervised release for his federal conviction for distribution of heroin, Defendant texted the adult victim ("AV") and stated, "I'm gonna shoot your house up if you protect her tonight. If she shows up know she's putting your children in harms way she stole my truck. If I don't hear from her in 15 minutes I'm coming your way." Gov't Resp., 3, ECF No. 68. AV called 911. When officers arrived, they found Defendant's truck parked near the residence. They searched the vehicle, found a loaded AR-15 in the front seat, and seized the weapon. On February 25, 2020, law enforcement located and arrested Defendant in The Dalles, Oregon as he was driving back from an unauthorized trip to Minnesota. Defendant denied driving to the residence on February 11, 2020, and attempted to persuade one of his

acquaintances to say that the gun belonged to the acquaintance. The acquaintance refused to tell authorities that the weapon belonged to him and explained that he previously sold the weapon to Defendant. *Id*. at 3-4.

On August 20, 2020, Defendant was indicted on one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On November 10, 2021, Defendant pleaded guilty to the one count of the Indictment. On April 11, 2022, United States District Judge Ann Aiken sentenced Defendant to 120 months imprisonment followed by a three-year term of supervised release.[1]

On February 18, 2025, Defendant filed a Motion for Compassionate Release. The Court took the matter under advisement on August 28, 2025.

## STANDARDS

A federal district court generally "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Under 18 U.S.C. § 3582(c)(1)(A), Congress has, however, provided an exception, commonly known as compassionate release, to reduce a defendant's sentence for "extraordinary and compelling reasons." Section 3582(c)(1)(A) provides in pertinent part:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>     (i)    Extraordinary and compelling reasons warrant such a reduction; [ . . . ]

---

[1] Defendant's projected release date is October 26, 2028.

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The United States Sentencing Commission's policy statement identifies categories of extraordinary and compelling reasons to reduce the sentence. The categories of extraordinary and compelling reasons to be considered individually and in the aggregate include the defendant's medical conditions, age, family circumstances, and status as a victim of abuse. U.S.S.G. § 1B1.13(b)(1)-(4). The policy statement also contains a catchall provision for other circumstances that, alone or when combined with circumstances from the specified categories, are "similar in gravity." *Id.* § 1B1.13(b)(5).

A defendant seeking a reduction of his sentence bears the burden to establish that he has exhausted administrative remedies and that extraordinary and compelling reasons warrant a reduction of his sentence. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Madrigal,* No. 3:22-CR-00401-HZ, 2025 WL 2792677, at *2 (D. Or. Sept. 30, 2025) (citing *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998) (defendant bears the burden to establish entitlement to sentencing reduction)).

## DISCUSSION

**I.     Exhaustion**

Defendant requested compassionate release from the warden of FCI Coleman in "early 2025" and more than 30 days have passed since his request. Def.'s Mot., 8, ECF No. 66. Accordingly, Defendant has exhausted his administrative remedies and his Motion is ripe for review.

**II.    Extraordinary and Compelling Reasons**

Defendant seeks compassionate release on the grounds that he needs to care for his mother and he is not receiving adequate treatment for his depression and bipolar disorder.

A.   **Family Circumstances**

Section 1B1.13(b)(3)(C) provides that extraordinary and compelling circumstances may be shown when a defendant's parent, who because of mental or physical disability or a medical condition, is incapable of self-care and "the defendant would be the only available caregiver" for that parent. A defendant bears the burden to establish that a parent is incapable of self-care with some objective evidence. *See, e.g., United States v. Babit*, No. 2:20-CR-00276-GMN-EJY-1, 2024 WL 3398307, at *4 (D. Nev. July 9, 2024) ("This letter does demonstrate that Defendant's parents have conditions making daily life more challenging but includes no verifiable medical documentation indicating they are incapable of self-care."); *United States v. Azama*, No. 2:22-cr-00060, 2024 WL 81384, at *2 (D. Nev. Jan. 5, 2024) (denying defendant's motion for compassionate release in part because the defendant failed to provide the court with "an objective medical diagnosis that Defendant's mother could not be left alone" in support of his extraordinary and compelling circumstances contention); *United States v. Bistodeau*, No. 4:17-cr-00100, 2022 WL 6731367, at *2 (D. Idaho Oct. 11, 2022) (finding that the defendant's father's diagnosis of leukemia, without more, did not constitute incapacitation). "To establish the extraordinary and compelling requirement for a sentence modification, the defendant must [also] make a robust evidentiary showing that defendant is the only available caregiver." *United States v. Bragg*, 2021 WL 662269, at *2 (S.D. Cal. Feb. 19, 2021) (quotation omitted). "If there are family members or others that could be potential caregivers, the defendant must acknowledge why they are inadequate." *United States v. Moore*, No. 21-CR-02565-GPC-1, 2025 WL 2345226, at *5 (S.D. Cal. Aug. 13, 2025) (citing *United States v. Cruz-Rivera*, 2020 WL 5993352, at *7 (E.D.P.A. October 9, 2020) (the defendant failed to show unavailability or present whereabouts of other family members)); *United States v. Rice*, 2023 WL 6048777, at *3

(N.D. Cal. Sept. 14, 2023) (the defendant failed to show unavailability of sons as caretakers for their mother despite explaining that "both sons work full time, and both have families and households of their own")).

Defendant states that since his father died in August 2024 his mother has been struggling financially, she has had to "take on extra work just to make ends meet," and she could "benefit from [Defendant's] help." Def.'s Mot., 5. Defendant, however, has not established that his mother is incapable of self care nor has he made a "robust showing" that he is the only potential caregiver. The Court recognizes that the family members of incarcerated individuals often struggle to cope without that individual's aid, but Defendant's situation is "not so unusual from similar [individuals with] aging parents." *United States v. Jackson*, No. CR92-1781-RJB, 2025 WL 2733906, at *3 (W.D. Wash. Sept. 24, 2025). The Court concludes that Defendant has not established that his family situation constitutes extraordinary and compelling circumstances for release.

B.    **Medical Care**

Defendant asserts that his medical conditions and lack of treatment are extraordinary and compelling reasons that warrant compassionate release. Defendant asserts he is not receiving appropriate or sufficient treatment for his depression and bipolar disorder, which increases his risk of deterioration or death.

Several district courts have held that "[a]ny Eighth Amendment arguments defendant may have regarding the conditions of confinement may be properly brought in a habeas petition or a direct civil claim, not a motion for compassionate release." *United States v. Rollness*, No. CR06-041RSL, 2021 WL 4476920, at *6 n.6 (W.D. Wash. Sept. 30, 2021) (collecting cases). The Ninth Circuit, however, has specifically declined to rule on whether Eighth Amendment

claims may be brought under § 3582(c)(1)(A). *See, e.g., United States v. Wheeler*, 837 F. App'x 542 (9th Cir. 2021); *United States v. Rivera*, 845 F. App'x 683 (9th Cir. 2021); *United States v. Alcaraz*, No. 22-10097, 2022 WL 12030043 (9th Cir. Sept. 19, 2022); *United States v. Arceneaux*, 830 F. App'x 859 (9th Cir. 2020). Accordingly, although Defendant's Eighth Amendment issues are likely better suited to a habeas petition or civil rights action, "there appears to be no barrier preventing the Court from considering his [allegations] under the compassionate release framework." *United States v. Slaughter*, No. CR13-359RSL, 2023 WL 5609339, at *4 (W.D. Wash. Aug. 30, 2023) (citing *United States v. Roper*, 72 F.4th 1097, 1100-01 (9th Cir. 2023) (noting the "broad discretion" district courts have in determining "what may constitute extraordinary and compelling reasons")). *See also United States v. Shelton*, No. 20-CR-00050-HZ, 2024 WL 4164528, at *2 (D. Or. Sept. 12, 2024) (considering Defendant's Eighth Amendment arguments under the compassionate release framework).

Defendant states that when he entered BOP custody in 2020 he was on a successful regimen of benzodiazepines for his bipolar disorder and Adderall for his ADHD, but those medications are not permitted in custody due to the potential for abuse and, therefore, they were discontinued. Although Defendant received other medications, he asserts they did not treat his conditions sufficiently and, as a result, he attempted suicide after four weeks in custody. Defendant relies on a May 22, 2025, report of Karl Mobbs, M.D., forensic psychiatrist, to support his assertion that he has not received sufficient mental-health treatment. Dr. Mobbs reviewed Defendant's medical records from 2020 through 2025 and concluded that "treatment of [Defendant's] bipolar disorder, ADHD, substance use, and pain would likely be easier to address in the community." Gov't Resp., Ex. 1, at 13. Dr. Mobbs noted that "it would be easier to address [Defendant's] mood instability in a community setting where the choice of medications

would be broader" because both "benzodiazepines and [Adderall] are not made available in corrections due to the high likelihood of them being abused." *Id*. at 12. Dr. Mobbs also noted, however, that benzodiazepines are contraindicated for Defendant because he suffers from obstructive sleep apnea." *Id*. Nevertheless, Dr. Mobbs concluded that if Defendant "were to continue his current treatment plan his mental health would be likely to deteriorate and thus increase his risk of attempting suicide once again." *Id.* at 13.

  The government notes that Defendant has been prescribed numerous medications including Abilify, Lexapro, Oxcarbazepine, fluoxetine, Prozac, and Celexa in an effort to treat his mental-health conditions. BOP will not, however, prescribe Defendant's choice of antidepressant because it is a benzodiazepine. Moreover, the record reflects that at the time of his attempted suicide Defendant was taking suboxone, which was not prescribed by BOP[2], and which was "likely contributing to his emotional lability and possibly the suicide attempt." Gov't Resp., Ex. 1, 9. In addition, the record reflects that on July 11, 2024, Defendant stated he did not want to take his mental-health medications and on August 23, 2024, Defendant "was noted not to be taking his Celexa." *Id*. at 7-8.

  Although addressing Defendant's mental-health issues might be easier in the community, that is not the standard for an extraordinary and compelling reason for release. Defendant's mental-health conditions are being managed in custody and his mental health is being monitored. The Court concludes on this record that Defendant has not established a lack of medical care rising to the level of an extraordinary and compelling reason to reduce his sentence.

 / / /

 / / /

---

[2] It is unclear how Defendant got suboxone.

Page 7 — OPINION AND ORDER

### III. Sentencing Factors

The government asserts that even if Defendant has satisfied the criteria of U.S.S.G. § 1B1.13(b)(2), the § 3553(a) factors counsel against any reduction in Defendant's sentence.

Before modifying an imposed term of imprisonment, a Court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes by the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, and other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). A district court's "overarching statutory charge . . . is to impose a sentence sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; and to protect the public." *United States v. Lizarraras-Chacon*, 14 F.4th 961, 966 (9th Cir. 2021) (internal quotation and citation omitted).

The nature and circumstances of Defendant's offense are serious and his history and characteristics are concerning. Defendant threatened to "shoot up" AV's house, drove to AV's house with a loaded AR-15, and attempted to convince an acquaintance to lie to authorities and say the AR-15 did not belong to Defendant. Defendant engaged in these actions while on supervised release for his conviction for distribution of heroin. In addition. Defendant has a long history of crimes of violence including assault II, assault III, and intimidation in 2009 when he got into a fight and bit and tore part of the victim's ear off; assaulting a public safety officer in 2006; attempted assault II, assault IV, and menacing in 2002 when he bit the victim on head and

attempted to hit him with a lamp; escape and simple assault in 1995; simple assault on a peace officer in 1993 when he bit the officer on the arm; and aggravated assault in 1993 when he stabbed the victim on the arm. Defendant also has convictions for felon in possession in 2002, failure to appear, and possession of a controlled substance.

Defendant asserts that if released he intends to participate in dual diagnosis treatment and restart the mental-health medications that had been working for him in the community. Defendant, however, was on the combination of mental-health medications that he asserts "worked great" for him when he threatened to "shoot up" AV's residence and drove there with a loaded AR-15.

The nature and circumstances of Defendant's underlying offenses are significant and the sentence imposed by Judge Aiken reflects the seriousness of the offenses, affords adequate deterrence, and protects the public from further crimes by Defendant. *See* 18 U.S.C. § 3553(a)(2). The Court, therefore, concludes that Defendant has not carried his burden to show that a reduction of his sentence would be consistent with the federal sentencing factors. Accordingly, the Court denies Defendant's Motion for Compassionate Release.

## CONCLUSION

For the reasons discussed above, Defendants' Motion for Compassionate Release (ECF No. 53) is DENIED.

DATED this 21st day of October 2025.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (he/him)
United States District Judge